UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZOILA ROSALES,<br><br>    Plaintiff,<br><br>v.<br><br>VITAS HEALTHCARE CORPORATION OF CALIFORNIA,<br><br>    Defendant. | Case No. 25-cv-05417-JSC<br><br>**ORDER RE: MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 9 |

Plaintiff sues her former employer for discrimination, wrongful termination, and meal and rest break violations. (Dkt. No. 1-1 at 8-21.)[1] Now pending before the Court is Defendant's motion to compel arbitration. (Dkt. No. 9.) Having carefully considered the parties' submissions, the Court concludes oral argument is not required, *see* N.D. Cal. Civ. L.R. 7-1(b), VACATES the September 18, 2025 hearing, and GRANTS Defendant's motion to compel arbitration. Defendant has demonstrated an arbitration agreement exists and encompasses the dispute, and Plaintiff has not shown the agreement is unconscionable.

## BACKGROUND

### I. COMPLAINT ALLEGATIONS

Plaintiff worked for Defendant as a licensed vocational nurse in California from 2009 to 2024. (Dkt. No. 1-1 at 9, 11.) In February 2024, Plaintiff went on medical leave because rheumatoid arthritis was causing severe pain in her hands and feet. (*Id.* at 11.) Plaintiff's initial return-to-work date was May 20, 2024, but as her condition worsened, her medical leave was extended to August 20, 2024 and then November 20, 2024. (*Id.*) Around September 12, 2024,

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

1    Plaintiff asked Defendant's Human Resources Representative Aishner Badillo if she could work
2    part-time before retiring the following year. (*Id.*) Mr. Badillo responded Plaintiff's employment
3    would be terminated if she did not return to work the next day. (*Id.*) The next day, despite having
4    approved Plaintiff's medical leave through November 20, 2024, Defendant terminated Plaintiff's
5    employment. (*Id.*) Plaintiff alleges "her disability and age were motivating factors in Defendant's
6    decision to terminate her employment" while on approved medical leave. (*Id.*)

## II.     PROCEDURAL HISTORY

Plaintiff sued Defendant in California Superior Court for (1) disability discrimination and wrongful termination, (2) failure to accommodate her disability, (3) failure to engage in interactive process, and (4) age discrimination in violation of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940(a), as well as (5) meal and rest break violations under Cal. Labor Code § 226.7(b), and (6) and wrongful termination in violation of public policy. (Dkt. No. 1-1 at 12-20.) Defendant told Plaintiff's counsel Plaintiff "voluntarily signed an arbitration agreement with [Defendant] on January 26, 2023," which "requires [Plaintiff] to arbitrate all of the claims that [s]he alleged," and asked Plaintiff to submit to arbitration. (Dkt. No. 9-2 at 3.) Plaintiff refused because she believed the agreement with Defendant was "substantively and procedurally unconscionable" and did not want to waive her right to a jury trial. (*Id.* at 2-3.) Defendant removed the action to federal court and moved to compel arbitration. (Dkt. Nos. 1, 9.)

## III.    RELEVANT FACTS RE: AGREEMENT

Defendant attests associates, upon accepting an employment offer, receive an email containing a unique link to access and review onboarding documents, are "informed they have the option to review and sign the initial onboarding documents in hard copy, and must consent to receive, review, access, sign, and authenticate documents electronically." (Dkt. No. 9-3 ¶ 7.) Throughout their employment, employees are sent documents through the same electronic system for their review and signature. (*Id.* ¶ 8.) Because "[o]nly an individual using Plaintiff's unique link could have inserted the electronic signature, which was hand drawn by Plaintiff on the electronic device she used to view the agreement," Defendant concludes Plaintiff "electronically signed, via DocuSign, a Mutual and Voluntary Agreement to Arbitrate Claims" ("Agreement").

2

(*Id.* ¶ 9.)

> The Agreement provides:
>> 1. The Company [Defendant] . . . and I voluntarily enter into this Mutual and Voluntary Agreement to Arbitrate Claims (Agreement). Except as stated herein, the Company and I agree to use binding arbitration as the means to resolve all disputes that may arise out of or relate to my application for employment or employment with the Company, including termination of employment. . . .
>> 2. The Company and I each waive and relinquish our respective rights to bring a claim against the other in court and this waiver will be equally binding on any person who represents or seeks to represent the Company or me in a lawsuit against the other in court. . . .
>> 4. The Company and I agree the scope of this Agreement includes all disputes, whether based on tort, contract, or statute. This includes any claims of discrimination, harassment and/or retaliation, whether they be based on the California Fair Employment and Housing Act, Title VII of the Civil Rights Act of 1964, as amended, or any other state or federal law or regulation, equitable law, or otherwise. . . .
>> 9. <u>*Class and Collective Action Waiver*</u>*: The Company and I agree this Agreement eliminates my ability to bring or participate in class or collective actions. . . .*
>> **I VOLUNTARILY AGREE AND ASSENT TO THE TERMS OF THIS AGREEMENT. I AGREE IT IS UNNECESSARY FOR THE COMPANY TO SIGN THIS AGREEMENT FOR IT TO BE BINDING.**

(Dkt. No. 9-4 at 2-3.) According to Defendant's records, Plaintiff was sent the Agreement on January 10, 2023; January 24, 2023; and January 26, 2023. (*Id.* at 4.) Plaintiff first viewed the Agreement on January 26, 2023 at 1:41:11 PM, and she signed it via DocuSign at 1:41:53 PM the same day. (*Id.*) DocuSign did not offer an electronic record and signature disclosure. (*Id.*)

Plaintiff remembers an individual called to ask her to sign a document, but she does not recall who the individual was or what position they held, or the document's contents. (Dkt. No. 12-1 ¶ 3.) Following the individual's request, Plaintiff "opened the document and quickly signed it." (*Id.* ¶ 5.) Plaintiff attests she "did not have the opportunity to read and review" the document or consult with an attorney about it, and no one else reviewed the document with her or explained it to her. (*Id.* ¶¶ 4-5, 10.) In addition, Defendant never explained arbitration, its advantages or disadvantages, or its implications to Plaintiff during her employment; in fact, Plaintiff "did not understand what arbitration was until" present counsel explained. (*Id.* ¶¶ 7-8, 11.) Had she understood, Plaintiff "would have at the very least inquired about this term and would have attempted to negotiate these terms or opt out of arbitration," but she was "never given the option."

3

1  (*Id.* ¶ 12.)  Plaintiff did not receive a physical or electronic copy of the signed document.  (*Id.* ¶
2  13.)

## DISCUSSION

The Federal Arbitration Act ("FAA") governs arbitration agreements "evidencing a transaction involving commerce" and provides arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for revocation of any contract."  9 U.S.C. § 2.  Under the FAA, "arbitration agreements [are] on an equal footing with other contracts," and therefore courts must "enforce them according to their terms."  *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (citations omitted).  In resolving a motion to compel arbitration under the FAA, "a court's inquiry is limited to two gateway issues: (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021) (quotation marks and citation omitted).  "If both conditions are met, the FAA requires the court to enforce the arbitration agreement in accordance with its terms."  *Id.* (cleaned up).

## I.   AGREEMENT TO ARBITRATE

The party seeking to compel arbitration "bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence."  *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir. 2023).  "State contract law controls whether the parties have agreed to arbitrate."  *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (citation omitted).  Under California law, contract formation requires "a manifestation of mutual assent."  *Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850 (1999). "Mutual assent may be manifested by written or spoken words, or by conduct."  *Id.*  "Courts must determine whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement."  *Knutson*, 771 F.3d at 565.

Defendant meets its initial burden of proving an arbitration agreement exists because the Agreement includes arbitration terms and Plaintiff's signature.  (Dkt. No. 9-4.)  *See Espejo v. S. Cal. Permanente Med. Grp.*, 246 Cal. App. 4th 1047, 1060 (2016) ("[D]efendants may meet their *initial* burden to show an agreement to arbitrate by attaching a copy of the arbitration agreement

4

1  purportedly bearing the opposing party's signature."). Plaintiff admits she signed the Agreement
2  but contends there was no mutual assent because she was "not aware that she was entering into a
3  binding arbitration agreement" and did not have ample time to read the Agreement before signing
4  it. (Dkt. No. 12 at 11.) However, by signing the Agreement, Plaintiff manifested consent to its
5  terms. *See Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th
6  1042, 1049 (2001) ("[O]ne who signs an instrument which on its face is a contract is deemed to
7  assent to all its terms.") Whether Plaintiff understood or read the Agreement's terms is irrelevant.
8  *See id.* ("A party cannot avoid the terms of a contract on the ground that he or she failed to read it
9  before signing."); *see also Hoang v. Citibank, N.A.*, 702 F. Supp. 3d 864, 869 (N.D. Cal. 2023)
10 ("[Plaintiff] *could* be found to have consented to arbitration without . . . even reading or
11 understanding [contract's] terms.").

12  So, Defendant has proven an arbitration agreement exists.

## II.   ENCOMPASSES THE DISPUTE

Plaintiff does not dispute the Agreement encompasses her employment claims. Under the Agreement, Plaintiff and Defendant "agree to use binding arbitration as the means to resolve all disputes that may arise out of or relate to [Plaintiff's] application for employment or employment with the [Defendant], including termination of employment." (Dkt. No. 9-4 at 2.) The Agreement also encompasses "all disputes, whether based on tort, contract, or statute," including "any claims of discrimination, . . . whether they be based on the California Fair Employment and Housing Act . . . or any other state or federal law or regulation, equitable law, or otherwise." (*Id.*) Because Plaintiff's claims arise out of her employment and termination of employment with Defendant, the Agreement encompasses this dispute.

## III.  UNCONSCIONABILITY

Under the FAA, an arbitration agreement is invalid when it is unenforceable under "generally applicable contract defenses" recognized by state law, such as "unconscionability." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (cleaned up). "The party resisting enforcement of an arbitration agreement has the burden to establish unconscionability." *Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478, 492 (2024). Under California law, a plaintiff seeking

5

to invalidate a contractual provision as unconscionable must prove both procedural and substantive unconscionability. *See Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1023 (9th Cir. 2016) (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000)).

### A.     Procedural Unconscionability

Procedural unconscionability "focus[es] on oppression or surprise due to unequal bargaining power." *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1133 (2013). "[T]he threshold inquiry in California's unconscionability analysis is whether the arbitration agreement is adhesive." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016) (cleaned up). A "take-it-or-leave it" agreement without an opportunity to opt out of arbitration is adhesive. *See Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1014 (9th Cir. 2023); *see also Mohamed*, 848 F.3d at 1211 ("[A]n arbitration agreement is not adhesive if there is an opportunity to opt out of it.") Although adhesion "establish[es] some degree of procedural unconscionability," it does not make an agreement "per se unconscionable." *Lim*, 8 F.4th at 1000-01 (quotation marks and citation omitted). Other factors relevant to establishing procedural unconscionability include:

> (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney.

*OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 126-27 (2019) (quotation marks and citation omitted).

Defendant does not dispute Plaintiff's attestation the Agreement "was presented to Plaintiff as a non-negotiable condition of her continued employment." (Dkt. No. 12 at 10.) Because the Agreement did not include an opt out option (Dkt. No. 9-4), it is adhesive and therefore procedurally unconscionable to some degree.

Plaintiff's other arguments for procedural unconscionability are unavailing. Defendant's failure to send Plaintiff a physical or electronic copy of the signed Agreement or the "arbitration rules" does not increase the Agreement's procedural unconscionability. Because procedural unconscionability "addresses the circumstances of contract negotiation and formation," the relevant question is not whether Plaintiff later received a copy of the signed Agreement, but

1    instead whether the Agreement Plaintiff received and signed contained all binding arbitration
2    terms. *See Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 246
3    (2012); *see also Armendariz*, 24 Cal. 4th at 114 (noting courts can refuse to enforce a contract
4    clause "unconscionable at the time it was made"). Plaintiff does not dispute she received and
5    signed an Agreement including all arbitration terms. *See Baltazar v. Forever 21, Inc.*, 62 Cal. 4th
6    1237, 1246 (2016) (noting increased procedural unconscionability when defendant "artfully
7    hid[es]" or "incorporate[es] by reference" binding arbitration terms (quotation marks and citation
8    omitted)); *see also Nguyen v. Applied Med. Res. Corp.*, 4 Cal. App. 5th 232, 249 (2016) ("Plaintiff
9    does not claim anything was hidden in the AAA rules, . . . [so] the failure to attach the applicable
10   AAA rules did not increase the procedural unconscionability.") That Plaintiff did not understand,
11   and Defendant did not explain, the consequences of agreeing to arbitration also does not increase
12   the Agreement's procedural unconscionability. *See Nguyen*, 4 Cal. App. at 249 (holding "mere
13   failure to explain the meaning of the word 'arbitration'" did not increase procedural
14   unconscionability); *see also Gutierrez v. Autowest, Inc.*, 114 Cal. App. 4th 77, 88 (2003)
15   ("[S]imply because a provision within a contract of adhesion is not read or understood by the
16   nondrafting party does not justify a refusal to enforce it."). And although Plaintiff attests she "was
17   rushed" and therefore reviewed the Agreement for only 42 seconds, she does not account for
18   Defendant's sending her the Agreement 16 days earlier. (Dkt. No. 12-1 ¶ 4; Dkt. No. 9-4 at 4.)
19   However, by demonstrating the Agreement was adhesive, Plaintiff has established some
20   degree of procedural unconscionability.

21   **B.     Substantive Unconscionability**

22   Despite their procedural unconscionability, adhesion contracts "remain valid and
23   enforceable unless the resisting party can also show that one or more of the contract's terms is
24   substantively unconscionable." *Ramirez*, 16 Cal. 5th at 492-93. "Substantive unconscionability
25   pertains to the fairness of an agreement's actual terms and to assessments of whether they are
26   overly harsh or one-sided." *Pinnacle Museum Tower Ass'n,* 55 Cal. 4th at 246. "A contract term
27   is not substantively unconscionable when it merely gives one side a greater benefit; rather, the
28   term must be so one-sided as to shock the conscience." *Id.* (quotation marks and citation omitted).

7

"The paramount consideration in assessing conscionability is mutuality." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281 (9th Cir. 2006) (cleaned up). "[U]nconscionability limits the extent to which a stronger party may, through a contract of adhesion, impose the arbitration forum on the weaker party without accepting that forum for itself." *Armendariz*, 24 Cal. 4th at 118.

Plaintiff argues the Agreement is "overly harsh and one-sided, favoring the Defendant" because it "mandates arbitration for a broad range of disputes" and includes a "class and collective action waiver." (Dkt. No. 12 at 10.) However, the parties' agreement to "waive and relinquish [their] respective rights to bring a claim against each other in court" is mutual and therefore not substantively unconscionable. (Dkt. No. 9-4 at 2.) *See Baltazar*, 62 Cal. 4th at 1249 (finding no substantive unconscionability when "parties mutually agree to arbitrate all employment-related claims"). Although the class action waiver is not mutual, Plaintiff "does not seek to bring a class action, so she cannot rely on the class action waiver to establish that arbitration would be substantively unconscionable in her case." *See Van De Hey v. EPAM Sys. Inc.*, No. 24-cv-08800-RFL, 2025 WL 829604, at *8 (N.D. Cal. Feb. 28, 2025) (citing *Chin v. Advanced Fresh Concepts Franchise Corp.*, 194 Cal. App. 4th 704, 714 (2011) (preventing plaintiff from relying on class action waiver which did not hinder pursuit of legal remedy)).

So, Plaintiff has not established the Agreement is both procedurally and substantively unconscionable.

## CONCLUSION

Because a valid arbitration agreement exists and encompasses the dispute, and Plaintiff does not establish the agreement is unconscionable, the Court GRANTS Defendant's motion to compel arbitration of Plaintiff's claims, and stays the case pending arbitration. *See Smith v. Spizzirri*, 601 U.S. 472, 474, 476-78 (2024) (requiring stay pending arbitration). On or before September 1, 2026, the parties shall jointly provide a written update on the status of the arbitration.

This Order disposes of Docket No. 9.

//

**IT IS SO ORDERED.**

Dated: September 16, 2025

_____
JACQUELINE SCOTT CORLEY
United States District Judge

9